UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

KEYRI MIGUEL ACEVADO CORREA,

                Petitioner,

      v.

CRAIG LOWE, et al.,

                Respondents.

CIVIL ACTION NO. 3:26-CV-00581

(MEHALCHICK, J.)

**MEMORANDUM**

Petitioner, Keyri Miguel Acevado Correa ("Correa"), a citizen of the Dominican Republic and asylum seeker, brings this petition for writ of habeas corpus. (Doc. 1). On March 9, 2026, Correa filed the instant petition, requesting that Respondents Todd Lyons, Kristi Noem, Pamela Bondi, and Warden of Pike County Correctional Facility[1] release him from custody at the Pike County Correctional Facility in Lords Valley, Pennsylvania. (Doc. 1, at 3). On March 12, 2026, Lowe filed a response to Correa's petition. (Doc. 3). For the following

---

[1] Pursuant to the "immediate custodian rule," the only proper respondent in this case is Craig Lowe ("Lowe"), Warden of the Pike County Correctional Facility. "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Correa is detained at the Pike County Correctional Facility, Lowe is the proper respondent. (Doc. 1, at 3); *see Rumsfeld*, 542 U.S. at 434. As such, Respondents Todd Lyons, Kristi Noem, and Pamela Bondi are **DISMISSED**. However, the government will be bound by the Court's judgment because Lowe is acting as an agent of the federal government by detaining Correa on behalf of Immigration and Customs Enforcement ("ICE"). *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, 3:25-cv-01896, 2025 WL 3522932, at *8 (M.D. Pa. Nov. 13, 2025), *adopted in part, rejected in part*, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (finding same).

reasons, Correa's petition (Doc. 1) is **GRANTED**, and Lowe is **ORDERED** to release Correa from custody.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The following background is derived from Correa's petition, Lowe's response, and the exhibits thereto. (Doc. 1; Doc. 3). Correa is a citizen of the Dominican Republic, who has lived in the United States since October 2023. (Doc. 1, at 3). According to Correa, he first entered the United States on October 2, 2023, by presenting himself at the border and declaring to immigration authorities that he seeks refuge in the United States. (Doc. 1, at 3). The government contends and Department of Homeland Security ("DHS") records indicate that Correa entered the United States without inspection within 100 air miles of the United States and Mexico border. (Doc. 3, at 10; Doc. 3-2, at 3). Correa claimed fear of return to the Dominican Republic, and an asylum officer found that Correa demonstrated credible fear of persecution or torture. (Doc. 3, at 3; Doc. 3-2, at 4). According to Correa, immigration authorities then issued him a Notice to Appear and released him either on humanitarian parole or on his own recognizance. (Doc. 1, at 4). The government contends and DHS records indicate that Correa was not admitted or paroled in the United States after inspection. (Doc. 3, at 3; Doc. 3-3, at 1). Since entering the United States, Correa has applied for asylum and complied with the requirements of the immigration process. (Doc. 1, at 6-7).

On or about December 13, 2024, ICE took Correa into custody after local authorities arrested him in Lackawanna County. (Doc. 1, at 4). Correa is currently detained at the Pike County Correctional Facility in Lords Valley, Pennsylvania. (Doc. 1, at 4). The Executive Office for Immigration Review's case information indicates that Correa has a master hearing on March 30, 2026, in the Elizabeth Immigration Court. EOIR Automated Case Information,

2

https://acis.eoir.justice.gov/en/caseInformation (last visited March 20, 2026).

## II.    LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing or release if the Court determines that a noncitizen habeas petitioner is entitled to such relief under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a bond hearing under relevant statutory protections); *see also Alexey Kashranov v. J.L. Jamison, et al.*, No. 2:25-CV-05555, 2025 WL 3188399 at *8 (E.D. Pa. Nov. 14, 2025) (finding that the

appropriate remedy when the government detains a petitioner under an inapplicable statute, violating due process, is release from custody).

**III.    JURISDICTION**

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Recently, in *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the Immigration and Nationality Act ("INA") strips district courts of subject-matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR"). However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later on a PFR. *Kahlil*, 164 F.4th at 273-74.

Habeas actions based on whether a petitioner is detained pursuant to the appropriate statute, 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226(a), and is entitled to a bond hearing are "now or never" legal questions that remain in the jurisdiction of district courts. *See Kahlil*, 164 F.4th at 274-77; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability will be determined). A determination of whether § 1225(b) or § 1226(a) applies to a petitioner

4

also determines whether that petitioner is entitled to a bond hearing. *See Matter of Yajure Correa,* 29 I. & N. Dec. 126 (BIA 2025) (holding immigration judges lack authority to hear bond requests for noncitizens detained under § 1225(b)); *see Kashranov,* 2025 WL 3188399 at *5 (citing § 1226(a)) (finding § 1226(a) allows for detainees to be released on conditional parole or bond). Such claims do not arise from removal proceedings, they arise "now." If left to be raised on a PFR, the petitioner will never get the opportunity for an immigration judge to determine their eligibility for bond during removal proceedings. *See Kahlil,* 164 F.4th at 274-77 ("when [noncitizens] raise claims that courts cannot 'meaningfully' review through the PFR process, those claims do not 'aris[e] from' the 'action[s] taken' or 'proceeding[s] brought' to remove them"). Thus, the Court retains jurisdiction because the legal questions of whether § 1225(b) or § 1226(a) applies to Correa and whether Correa is entitled to a bond hearing are wholly collateral to his removal proceedings and cannot be meaningfully reviewed on a PFR. *Jennings,* 583 U.S. at 294; *Kahlil,* 164 F.4th at 274-79.

## IV.    DISCUSSION

Correa contends that his mandatory detention under § 1225(b)(2)(A) is a violation of the INA and the Due Process Clause of the Fifth Amendment. (Doc. 1, at 5, 8). Lowe counters that Correa in not detained under § 1225(b)(2)(A). (Doc. 3, at 1). Lowe contends that Correa is subject to mandatory detention because he falls squarely under § 1225(b)(1), which provides noncitizens only with the rights and protections set forth by Congress. (Doc. 3, at 10-11). The Court will first address whether Correa was properly detained under § 1225(b)(2)(A) or § 1225(b)(1). The Court will then address whether Correa's detention violates due process.

A.  LOWE IMPROPERLY DETAINED CORREA UNDER 8 U.S.C. 1225(B).

Lowe improperly detained Correa under 8 U.S.C. § 1225(b), when Lowe should have detained Correa under 8 U.S.C. § 1226(a). Correa avers that noncitizens who previously entered and resided in the United States before ICE apprehended them are not subject to detention under § 1225(b)(2)(A). (Doc. 1, at 6-7). Lowe counters that Correa is not detained under § 1225(b)(2)(A) but is properly detained under § 1225(b)(1), which mandates the detention of noncitizens who were paroled into the United States after entering at or near a port of entry. (Doc. 3, at 13-14).

The INA is a comprehensive statute regulating immigration, which Congress has repeatedly reworked since its enactment in 1952. *Kashranov*, 2025 WL 3188399, at *1. Before 1996, the INA provided that noncitizens who presented themselves at ports of entry were subject to mandatory detention during exclusion proceedings, while noncitizens who evaded inspection by entering elsewhere were afforded the opportunity to obtain release during deportation proceedings. *Matter of Yajure Correa*, 29 I. & N. Dec. 216, 222-223 (BIA 2025) (citing 8 U.S.C. §§ 1225(a); 1251 (1994)). In 1996, the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") amended the INA to include § 1225 and § 1226, in part, to end the preferential treatment of noncitizens who evaded inspection when entering the United States. OMNIBUS CONSOLIDATED APPROPRIATIONS ACT, 1997, PL 104–208, September 30, 1996, 110 Stat 3009; H.R. Rep. No. 104-469, at 225 (1996); *see Correa, 29 I. & N. Dec. at 223*. With the IIRIRA, Congress eliminated separate exclusion and deportation hearings and combined them into a single removal proceeding, regardless of where the noncitizen entered the United States. 8 U.S.C. § 1229a. Since 1996, only

6

noncitizens who are admitted are subject to deportation, while noncitizens who have never been formally admitted are deemed inadmissible. 8 U.S.C. § 1182(a).

Pursuant to section 1225(b)(1) of the IIRIRA, when a noncitizen enters the United States at a designated port of entry or immigration authorities encounter a noncitizen "within 14 days of entry without inspection and within 100 air miles of any U.S. international land border," the noncitizen is considered an "arriving alien" and is generally subject to expedited removal, unless they indicate an intention to apply for asylum. 8 U.S.C. § 1225(b)(1)(A); *Castro v. United States Dep't of Homeland Sec.*, 835 F.3d 422, 425 (3d Cir. 2016). If the asylum officer finds a noncitizen's asserted fear of persecution to be credible, the noncitizen's asylum claim will be fully considered in a standard removal hearing. 8 C.F.R. § 208.30(f); 8 U.S.C. § 1225(b)(1)(B)(ii). Such a noncitizen is subject to detention while an immigration judge considers their asylum application; however, DHS may grant such a noncitizen parole into the United States for humanitarian purposes under 8 U.S.C. § 1182(d)(5). 8 U.S.C. § 1225(b)(1)(B)(ii); 8 U.S.C. § 1182(d)(5). Parole pursuant to § 1182(d)(5) "shall be automatically terminated without written notice (i) upon the departure from the United States of the alien, or (ii) if not departed, at the expiration of the time for which parole was authorized." 8 C.F.R. § 121.5(e)(2)(i); *A-J-R v. Rodosky*, No. 25-17279, 2026 WL 25056 at *4 (D.N.J. 2026). Parole pursuant to § 1182(d)(5) may otherwise be terminated "on written notice 'upon accomplishment of the purpose for which parole was authorized or when . . . neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." *Rodosky*, 2026 WL 25056, at *4 (citing 8 C.F.R. § 121.5(e)(2)(i)). Lowe avers that Correa is subject to mandatory detention and expedited removal under § 1225(b)(1)

because immigration authorities encountered Correa within miles of a port of entry only a few days after he entered the United States. (Doc. 3, at 10).

Section 1225(b)(2)(A) of the INA is a catchall provision, that applies to applicants for admission not otherwise covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287. Section 1225(b)(2)(A) of the INA provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained [pending removal hearings]." Pursuant to this provision, noncitizens are subject to mandatory detention while their removal proceedings are pending, but they may be released "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (citing § 1182(d)(5)(A)); *Kashranov*, 2025 WL 3188399, at *1. To trigger § 1225(b)(2)(A), an examining immigration officer must determine that an individual is (1) an applicant for admission, (2) seeking admission, and (3) not clearly and beyond a doubt entitled to be admitted. *Martinez v. Hyde*, 792 F. Supp. 3d, 211, 214 (D. Mass. July 24, 2025), *Kashranov,* 2025 WL 3188399, at *6. Section 1225(b)(2)(A) applies only to a noncitizen who is both an "applicant for admission" and "seeking admission." *Kashranov*, 2025 WL 3188399, at *6; *Soto v. Soto*, 807 F. Supp. 3d 397, 408 (D.N.J. 2025) (collecting cases).

The INA defines an applicant for admission as a noncitizen who is "present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1); *Jennings*, 583 U.S. at 286. The phrase "alien seeking admission" is not defined in § 1225, so the Court must construe the phrase based upon its ordinary meaning and statutory context. *See Kashranov*, 2025 WL 3188399, at *6; *see also J.A.M. v. Streeval*, No. 4:25-cv-34 2 (DCL), 2025 WL 3050094, at *5 (M.D. Ga. Nov. 1, 2025). District courts in the Third Circuit and

across the country have found that "seeking admission" describes active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry. *Kashranov*, 2025 WL 3188399, at *6; *Del Cid v. Bondi*, No 3:25-cv-00304, 2025 WL 2985150, at *16 n. 7 (W.D. Pa. Oct. 23, 2025); *J.A.M.*, 2025 WL 3050094, at *3; *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025); *see Cantu-Cortes*, 2025 WL 3171639, at *2 (quoting *Vazquez v. Feeley*, No. 25-cv-01542, 2025 WL2676082, at *13 (D. Nev. Sept. 17, 2025)) (finding a noncitizen who has already been residing in the United States cannot be characterized as "seeking entry" consistent with the ordinary meaning of that phrase). This reading comports with the Supreme Court's finding in *Jennings v. Rodriguez*, 583, U.S. 281, 285 (2018), that § 1225(b) "applies primarily to aliens seeking entry into the United States," those who are "seeking admission into the country." *See Soto*, 807 F. Supp. 3d at 407. This reading also preserves a distinction between "seeking admission" and the separate term "applicant for admission," ensuring that each phrase carries independent meaning.[2] *Kashranov*, 2025 WL 3188399, at *6.

Section 1226 of the INA applies to noncitizens who are not seeking admission but are already present in the United States. *Jennings*, 583 U.S. at 288-89. Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The Attorney General may release a noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a)(2). Pursuant to § 1226(a), "[i]mmigration authorities make an initial custody

---

[2] The Court acknowledges that the Fifth Circuit recently issued a decision in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 503 (5th Cir. 2026), holding that under the INA an "applicant for admission" is necessarily someone who is "seeking admission." However, *Buenrostro-Mendez* is not binding on the Court.

determination, after which the noncitizen may request a bond hearing before an immigration judge." *Kashranov*, 2025 WL 3188399, at \*1 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). At their bond hearing, a noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019); *see Kashranov*, 2025 WL 3188399, at \*1.

On July 8, 2025, ICE and the Department of Justice announced a new practice, in which all applicants for admission, regardless of when the noncitizens were apprehended, are now subject to the mandatory detention provision of § 1225(b)(2)(A). Interim Guidance Regarding Detention Authority for Applicants for Admission, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited March 23, 2026). On September 5, 2025, the BIA adopted the DOJs new position, holding that immigration judges have no authority to consider bond requests for any person who entered the United States without admission, finding all applicants for admission are subject to detention under § 1225(b)(2)(A) and are ineligible for release on bond. *Matter of Yajure Correa*, 29 I. &N. Dec. 216 (BIA 2025). Several district courts across the country, including courts in the Third Circuit, reject this new policy and the application of § 1225(b)(2)(A) to noncitizens who have been residing in the United States for a period of time before they are detained by ICE pending removal proceedings. *Cantu-Cortes*, 2025 WL 3171639, at \*2 (finding that § 1226(a), not § 1225(b)(2)(A), is applicable to a petitioner who resided in the United States for approximately 25 years before ICE detained him); *Kashranov*, 2025 WL 3188399, at \*1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petitioner who lived in the United States for almost two years was not seeking admission but was "already here"); *Del Cid v. Bondi*,

2025 WL 2985150 at *14-17 (finding noncitizens who had been in the United States for over two years when arrested are subject to § 1226(a) not § 1225); *Soto,* 807 F. Supp. 3d at 408 (collecting cases).

Section 1226(a), not § 1225(b)(1) or § 1225(b)(2)(A), applies to Correa's detention. While Correa was subject to § 1225(b)(1) when immigration authorities encountered him within 14 days of entry without inspection and within 100 air miles of any U.S. international land border, after his release on recognizance, Correa should have been detained under § 1226(a). *Jennings,* 583 U.S. at 289 ("U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2) . . . [and] to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)); *Soto,* 807 F. Supp. 3d at 403. The government concedes and DHS records show that Correa was not admitted or paroled into the United States after immigration authorities inspected him near the border. (Doc. 3, at 3; Doc. 3-3, at 1). As Correa was not paroled into the United States, his parole could not have been revoked placing him constructively back at the border, subject to 8 U.S.C. § 1225(b)(1).[3] *See* 8 C.F.R. § 1.2; *see also Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 139 (2020). Courts in the Third Circuit have found that noncitizens who have been released on their own recognizance and have been living in the United States for an extended period before they are apprehended and

---

[3] Even if Correa was paroled into the United States, § 1225(b)(1) would not be a lawful basis for his detention because Correa was not detained under the parole revocation procedures described in 8 C.F.R. § 212.5(e). *See Rokosky,* 2026 WL 25056, at *5 (D.N.J. Jan. 5, 2026) ("Because § 1225(b)(1) is not a lawful basis for Petitioner's detention, and Petitioner was not detained under the parole revocation procedures described under 8 C.F.R. § 212.5(e), the Court concludes he can only be properly detained under 8 U.S.C. § 1226(a), as an inadmissible alien arrested pending a decision on whether he is to be removed from the United States.").

re-detained by immigration authorities, are properly detained pursuant to § 1226(a). *Kashranov,* 2025 WL 3188399, at *1; *Soto,* 807 F. Supp. 3d at 400, 408 (collecting cases).

Section 1225(b)(2)(A) likewise does not apply to Correa because Correa is not seeking admission into the United States. Section 1225(b)(2)(A) applies to noncitizens who are applicants for admission *and* are seeking admission to the United States. *See Martinez,* 792 F. Supp. 3d at 214, *see Kashranov,* 2025 WL 3188399, at *6; *see also* 807 F. Supp. 3d 397, at 400, 408 (collecting cases). Correa is not actively attempting to come into the United States. Correa has lived in the United States since October 2023. (Doc. 1, at 3). Based on the plain meaning of the phrase "seeking admission," Correa sought admission when he entered the United States on October 3, 2025. (Doc. 1, at 3); *see Kashranov,* 2025 WL 3188399, at *6 ("seeking admission describes active and ongoing conduct—physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization"). Instead, § 1226(a) applies to applicants for admission, like Correa, who are not actively seeking admission but who have been residing in the United States for an extended period. *See e.g. Kashranov,* 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petitioner who lived in the United States for almost two years was not seeking admission but "already here"). Accordingly, Lowe improperly detained Correa under § 1225(b), when he should have detained Correa under § 1226(a).

B. LOWE VIOLATED CORREA'S DUE PROCESS RIGHTS BY IMPROPERLY SUBJECTING CORREA TO MANDATORY DETENTION.

Lowe's continued mandatory detention of Correa under § 1225(b) violates Correa's procedural due process rights. Correa avers that even if his detention is authorized under the INA, the Due Process Clause of the Fifth Amendment independently limits the government's

12

authority to detain individuals that were already physically present within the United States when ICE apprehended them. (Doc. 1, at 8-9). Correa reasons that civil detention without opportunity for an individualized custody determination violates the due process protections guaranteed by the Fifth Amendment, which apply to noncitizens physically present in the United States. (Doc. 1, at 9). Lowe counters that the due process rights of noncitizens within the United States are limited to those rights and protections set forth by Congress. (Doc. 3, at 14).

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To determine whether a government action violates due process, courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). The *Mathews* balancing test weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the government's interest, including administrative burdens of additional procedures. *Mathews*, 424 U.S. at 334.

The first factor, private interest implicated by the government action, weighs heavily in Correa's favor because Lowe has deprived Correa of his physical liberty through improper detention without the possibility of bond under § 1225(b). *Hamdi v. Rumsfield*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by [the] government."); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment-from government custody, detention, or forms, of physical restraint-lies at the

13

heart of the liberty [the Due Process Clause] protects); *Soto*, 807 F. Supp. 3d at 409. The second factor, risk of erroneous deprivation and probable value of additional safeguards, also weighs heavily in Correa's favor because Correa remains erroneously detained without the possibility of release on bond pursuant to § 1225(b). *See Soto*, 807 F. Supp. 3d at 409 (citing *Barrios v. Shepley*, No. 1:25-cv-00406-JAW, 2025 WL 2772579, at \*11 (D. Me. Sept. 29, 2025); *Zumba v. Bondi*, No. 25-cv-14626, 2025 WL 2753496, at \*10 (D.N.J. Sept. 26, 2025)) (finding the second *Mathews* factor weighs in petitioner's favor when subject to erroneous detention without a showing from the government that petitioner presented a public safety or flight risk); *see also Kashranov*, 2025 WL 3188399, at \*5 (finding the lack of any individualized assessment creates a high risk of error). The third *Mathews* factor, the government's interest, also weighs in Correa's favor. Generally, the government's interest in detaining noncitizens is to ensure the appearance of noncitizens at future immigration proceedings and to prevent danger to the community. *Zadvydas*, 533 U.S. at 690; *Soto*, 807 F. Supp. 3d at 409-10. Here, Correa poses no such risk to the government's interest in detaining him. Lowe does not allege that Correa poses a flight risk or danger to the community. (*See* Doc. 3). Further, Correa has demonstrated compliance with the immigration process by following its requirements and timely applying for asylum. (Doc. 1, at 4). As each *Mathews* factor weighs in Correa's favor, Lowe's mandatory detention of Correa under § 1225(b) violates Correa's procedural due process rights. Accordingly, Correa's petition for writ of habeas corpus is **GRANTED**, and Lowe is **ORDERED** to release Correa from custody.[4]

---

[4] The Court notes that Correa also seeks relief in the form of attorney's fees and costs. (Doc. 1, at 12). The Court cannot award attorney's fees without first assessing affidavits and other evidence regarding the reasonableness of the fees sought. *See Toshiba Am. Med. Sys., Inc. v. Valley Open MRI & Diagnostic Ctr. Inc.*, 674 F. App'x 130, 133 (3d Cir. 2016) (nonprecedential) (noting that the party seeking attorney's fees bears "the burden of producing

## V.    CONCLUSION

For the foregoing reasons, Correa's petition for writ of habeas corpus is **GRANTED**. (Doc. 1). Lowe is **ORDERED** to release Correa from custody. Lowe is also permanently enjoined from re-detaining Correa under § 1225(b). Correa may move to reopen this matter if Lowe seeks to detain him under § 1226(a) and fails to schedule a timely bond hearing. The Clerk of Court is directed to close this matter.

An appropriate Order follows.

BY THE COURT:

Dated: March 27, 2026                      /s/ Karoline Mehalchick
                                           **KAROLINE MEHALCHICK**
                                           **United States District Judge**

---

evidence as to the reasonableness of the fees" and reversing a district court's grant of a request for fees based "solely [on] a declaration stating the amount claimed"); *see also Ohm Sys., Inc. v. Senergene Sols., LLC*, No. CV 23-1340, 2025 WL 2772612, at *2 (D.N.J. Sept. 29, 2025) (noting that a court cannot assess a request for attorney's fees without sufficient evidence regarding the reasonableness of the fees sought). Accordingly, Correa must request attorney's fees in a separate motion with accompanying exhibits.